# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KENNETH McLAUGHLIN, JR. and )
MYRA McLAUGHLIN, husband and wife, and )
THOMAS WAYNE BUTLER, as individuals and )
on behalf of all others similarly situated, )
                                     Plaintiffs, )
v. )   Case No. CIV-09-1163-M
AMERICAN FIDELITY ASSURANCE )
COMPANY, a Domestic Corporation, )
                                     Defendant. )

## ORDER

Before the Court is Defendant American Fidelity Assurance Company's Adoption of Motion to Dismiss Previously Filed in Response to Plaintiff's First Amended Class Action Complaint Filed Without Leave of Court [docket no. 31], filed December 18, 2009. The adopted motion to dismiss was previously filed on November 24, 2009. On December 15, 2009, plaintiffs filed their response, and on January 12, 2010, defendant filed its reply. On February 1, 2010, plaintiffs filed a sur-reply. Based upon the parties' submissions, the Court makes its determination.

## I.   BACKGROUND

Defendant sells, issues and administers limited benefit cancer insurance policies to defray the costs, burdens, inconveniences or other associated obligations not covered by group health plans. The cancer policies at issue are forms of supplemental medical insurance. Benefits under the cancer policies are based upon financial losses incurred by the insured as a result of definitive cancer treatment, including, but not limited to, radiation, chemotherapy and blood and plasma.

The parties' dispute centers upon the interpretation of the cancer policy phrase "actual charges." The dollar amount of the supplemental cash benefits payable under defendant's cancer

policies is measured by the amount of the treating provider's actual charges for cancer-related medical treatment. The parties hotly contest whether the interpretation of the cancer policy phrase "actual charges" is defined as the provider's discounted charge, reflecting a reduction based upon negotiated steerage, or the provider's billed charge, before the reduction of any negotiated steerage discount.[1] Plaintiffs allege the ambiguity of the policy phrase "actual charge" has led defendant to wrongfully reduce benefits paid to insureds under its cancer policies.

In this putative class action, plaintiffs assert claims for: breach of contract, unjust enrichment, bad faith, declaratory relief and injunctive relief. Defendant now moves to dismiss this action for plaintiff's alleged failure to state a claim upon which relief may be granted.

## II. APPLICABLE STANDARD

"[A] complaint should not be dismissed for failure to state a claim unless it appears...plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007). The relevant inquiry is whether the complaint contains enough facts to state a claim to relief that is plausible on its face. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The issue in reviewing the sufficiency of plaintiffs' complaint is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must assume as true all well pleaded facts in plaintiffs' complaint and view them in a light most favorable to plaintiffs. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Sutton v. Utah State Sch. For the Deaf and Blind*, 173 F.3d

---

[1]Steerage is a form of non-cash remuneration that represents a quantifiable, economic value. Selected health plans, for example, often provide a medical provider with "steerage" by actively encouraging its insureds to seek out the services of certain preferred providers by offering them financial incentives such as reduced co-payments and deductibles when the insured chooses to receive medical treatment from those providers.

1226, 1236 (10th Cir. 1999). However, the Court need not accept as true plaintiffs' conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

III. DISCUSSION

A. The Oklahoma Statute

On November 1, 2006, a new statute took effect in Oklahoma that defined the term "actual charge" to mean "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided," and any insurance policy using the term "actual charges" must use the definition provided by this statute. *See* Okla. Stat. tit. 36, § 3651. The statute was not intended to apply retroactively to any insurance policies that had been fully executed, and it applies "only to insurance policies delivered, issued for delivery, or renewed on or after" November 1, 2006. *Id*. The statute also applies to an insurance policy only if the policy does not define "actual charges."

Defendant asserts that it is obliged to follow Oklahoma law when determining actual charges for the insurance claims submitted by plaintiffs and, as the cancer policies at issue do not define actual charges, the statutory definition provided by section 3651 controls and actual charges means the amount actually accepted by a medical provider as full payment. Plaintiffs respond that the statute is ambiguous and, if it is not read in their favor, constitutes a retroactive impairment of their rights under the policies in violation of the Contracts Clause of the United States Constitution.

The parties dispute the applicability of section 3651 to the cancer policies at issue. Defendant asserts that section 3651 applies to plaintiffs cancer policies following the first renewal after November 1, 2006, but plaintiffs assert that their renewable cancer policies are governed by the law as it existed when the cancer policies were executed. The statute, in full, states:

> A. As used in an individual or group specified disease insurance
> policy, "actual charge" or "actual fee" means the amount actually

> paid by or on behalf of the insured and accepted by a provider for services provided. Insurance policies that use these terms must use them as defined in this section.
>
> B. Except as provided by subsection C of this section, the change in law made by this section applies only to insurance policies delivered, issued for delivery, or renewed on or after the effective date of this act. An insurance policy delivered, issued for delivery, or renewed before the effective date of this act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.
>
> C. This section applies to an insurance policy in effect on the effective date of this act only if the policy does not define "actual charge" or "actual fee".

*Id*. Plaintiffs raise numerous arguments attacking the applicability of the statute to the cancer policies or the validity of the statute itself: (1) the statute is facially ambiguous and must be construed in their favor; (2) the cancer policies are renewable and statutes enacted after execution of the contract have no effect on these policies; and (3) the statute is invalid under the Contracts Clause.

"The primary goal of statutory construction is to ascertain and follow the intent of the legislature. The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." *S. Tulsa Citizens Coal., L.L.C. v. Ark. River Bridge Auth.*, 176 P.3d 1217, 1220 (Okla. 2008) (internal citations omitted). "Absent an ambiguity, the intent is settled by the language of the provision itself, and the courts are not at liberty to search beyond the instrument for meaning." *Id*. "Generally rules of statutory construction will not be applied to a statute if the will is clearly expressed. Nevertheless, because an ambiguity may arise other than from the words used by the Legislature, the application of constructive aids may be necessary." *Cox v. Dawson*, 911 P.2d 272, 276 (Okla. 1996) (internal

4

citations omitted). "Where possible, we will not construe statutes to reach an absurd or inconsistent result. In order to avoid judicially imposing a different meaning from that the Legislature intended, we will not place a strained construction on the plain words of a statute." *Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 305 (Okla. 2009).

Contrary to plaintiffs' arguments, the Court finds that section 3651(A) is facially unambiguous and must be interpreted solely considering the statutory language. Section 3651(A) provides that "actual charge" means the amount actually paid on behalf of the insured and accepted by a provider for services as full payment. There is nothing ambiguous about this language. "Applying the plain and ordinary meaning of the statutory language, it is clear that the Oklahoma Legislature intended to limit payment under any insurance policy using the term 'actual charge' to the amount accepted by a medical provider as full payment." *Lindley v. Life Investors Ins. Co. of Am.*, Nos. 08-CV-0379-CVE-PJC, 09-CV-0429-CVE-PJC, 2010 WL 723670, at * 5 (N.D. Okla. Feb. 22, 2010).

Plaintiffs also assert that section 3651(B) is facially ambiguous because its two sentences are inherently contradictory. Having reviewed the applicable section of the statute, the Court finds no conflict between the two sentences of section 3651(B). Whereas the first sentence clearly states that section 3651 applies to all policies "delivered, issued for delivery, or renewed" on or after November 1, 2006, the second sentence states that any insurance policy "delivered, issued for delivery, or renewed" before November 1, 2006 is governed by the law in effect when any one of those events occur. There is nothing ambiguous about this language. The Court finds, therefore, there is no reason to apply additional rules of statutory construction as suggested by plaintiffs when the clear legislative intent of the statute is to limit payment under a policy using the term "actual

5

charge." This determination concerning the constitutionality of section 3651 accords with the Oklahoma Supreme Court's well established principle that "a court is bound to give the statute an interpretation that will render it constitutional, unless constitutional infirmity is shown beyond a reasonable doubt." *Fent v. Okla. Capitol Improvement Auth.*, 984 P.2d 200, 204 (Okla. 1999).

Plaintiffs next assert that section 3651 violates that Contracts Clause of the United States Constitution if the statute is interpreted to apply retroactively to the renewable cancer policies. Plaintiffs argue that they are entitled to renew the cancer policies at issue indefinitely under the exact terms to which they originally agreed and, because "actual charges" has been construed in their favor due to an ambiguity, they must be paid the higher billed amount rather than the lesser amount actually accepted by their medical providers. Plaintiffs assertions are based upon two assumptions. First, plaintiffs assume that neither the insurer not the Oklahoma Legislature may ever change the cancer policies or the interpretation of the cancer policies' language because it is a renewable policy. To support this argument, plaintiffs cite Okla Stat. tit. 36, § 4405(C). Second, plaintiffs assume they have a vested contractual right to receive the higher billed amount and any impairment of this right violates the Contracts Clause.

When faced with the same issues as related to the identical statute,[2] Judge Eagan of the United States District Court of the Northern District of Oklahoma held, in pertinent part, the following:

> There may be limits on an insurer's power to unilaterally amend a guaranteed renewable policy, but plaintiff has not shown that the insurer may not incorporate new legislative enactments defining a previously undefined and ambiguous term into a renewed insurance

---

[2]The Court would note that plaintiffs' counsel herein also represented plaintiffs in the *Lindley* matter.

> policy as a matter of Oklahoma law. Plaintiff...[proposes] that a renewal of a guaranteed renewal insurance policy is treated as a continuation of the original insurance policy, and statutes passed after execution of the original policy do not apply.... The Oklahoma Supreme Court has not spoken on this issue and it is not clear how the Oklahoma Supreme Court would treat a renewal of a guaranteed renewable policy. The Tenth Circuit has held that Oklahoma follows the general rule that "[a]ll statutes made (or renewed) will be considered to be part of the contract provided that such statutes bear on the subject matter of the contract and define the rights and liabilities of the parties to the agreement." *MGA Ins. Co. Inc. v. Fisher-Roundtree*, 159 F.3d 1293, 1296 (10th Cir. 1998). Plaintiff cites OKLA. STAT. tit. § 4405(C), but this statute simply permits an insurer to issue a "guaranteed renewable" policy under some circumstances and does not provide any assistance in determining if a subsequent legislative enactment may modify the terms of a guaranteed renewable policy. The Court finds it is unnecessary to resolve this issue because § 3651 expressly applies to "renewals" of insurance policies after the effective date of the statute, and the Oklahoma legislature addressed this issue when it enacted § 3651. The authority cited by plaintiff does not show that the Oklahoma Legislature lacked the authority to pass a statute that prospectively applied to a renewal of his policy and, given the clear legislative intent to apply the statute to renewals of insurance policies, the Court finds that § 3651 applies to renewals of the Policy after November 1, 2006.

*Lindley*, 2010 WL 723670, at *6.

Having reviewed the parties' submissions, the Court finds that plaintiffs have not shown that the insurer may not incorporate new legislative enactments defining a previously undefined and ambiguous term into a renewed insurance policy as a matter of Oklahoma law for substantially the same reasons as set forth above.

Plaintiffs next assert that application of section 3651 to their guaranteed renewable insurance policies would impair their vested contractual right to receive the higher billed amount for medical services, and section 3651 violates the Contracts Clause. Plaintiffs rely on this Court's prior order in a separate case finding that the term "actual charges" was ambiguous and construing the term in

their favor. Plaintiffs contend that section 3651 impairs their vested right to receive the higher billed amount for services, because this was part of their contracts at the time they were executed and section 3651 constitutes a substantial impairment of their contractual rights. Defendant responds that section 3651 is presumed to be constitutional and the statute does not retroactively impair any obligation owed to plaintiffs under the cancer policies in violation of the Contracts Clause.

Article I, § 10 of the United States Constitution declares that "No State shall...pass any...Law impairing the Obligation of Contracts...." When considering a Contracts Clause challenge, the Court "ask[s] whether the change in state law has operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks and citation omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id*. When a new law does substantially impair contractual relations, "the State, in justification, must have a significant and legitimate public purpose behind the [law], such as the remedying of a broad and general social or economic problem." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983) (internal citation omitted). If the state had a significant and legitimate purpose for enacting the statute, a court must determine whether the change in law "[is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." *Id*. However, a reviewing court must "properly defer to legislative judgment as to the necessity and reasonableness of a particular measure," as long as the state is not a party to the contract. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987).

Clearly, the parties in this case have a contract and section 3651 affects plaintiffs' right to

payment under that contract. However, the parties disagree as to whether section 3651 substantially impairs plaintiffs' rights under the cancer policy. Plaintiffs rely upon this Court's holdings from *Metzger v. Am. Fid. Assurance Co.*, No. 05-1387, 2006 WL 2792435 (W.D. Okla. Sept. 26, 2006) (docket no. 73), in an attempt to establish that they have a vested contractual right to receive the higher billed amount on their claims. However, the Court did not hold that the *Metzger* plaintiff had a vested contractual right to recover money that he does not actually owe to his medical provider. The Court simply determined that the term "actual charges" was ambiguous, and because this term is strictly construed against defendant, and defendant paid the lower "post-negotiation" amount, defendant breached the contract in question. *See* Docket no. 73, at 7-8. As Judge Eagan determined in *Lindley*, this Court finds "Section 3651 removes any ambiguity from the term 'actual charges' and plaintiff[s] may not demand that [t]he[y] recover the billed amount now that the ambiguity has been clarified by the Oklahoma Legislature. It is also important to note that the Court's prior ruling [in *Metzger*] was on a motion for judgment on the pleadings, not a motion for summary judgment, and the Court accepted as true plaintiff's allegations that bills from his medical providers represented full payment of his expenses." *Lindley*, 2010 WL 723670, at *8.

Furthermore, the *Metzger* Court did not rule that plaintiff had a vested right to recover the higher billed amount after § 3651 was enacted. Section 3651 clearly states that actual charges means the lesser amount accepted by a medical provider as full payment, rather than the higher amount billed to the patient, and it removes the ambiguity from the [cancer policies at issue in this case]. While § 3651 is inconsistent with plaintiff[s'] expectations, this does not show that the statute is a substantial impairment to a vested contractual right. *See Energy Reserves Group*, 459 U.S. at 411 ("state regulation that restricts a party to gains it reasonably expected from the contract does not

9

necessarily constitute a substantial impairment")." *Id*. (internal citation omitted). While plaintiffs in this case have a right to receive "actual charges" under the cancer policies at issue, and accordingly, the right to receive full payment of the amounts for which plaintiffs are obliged to pay medical providers, the Court fails to see how denying plaintiffs additional funds not owed to medical providers deprives them of substantial rights under the cancer policies.

Even assuming that section 3651 substantially impairs plaintiffs of substantial rights, the Court finds this impairment would not run afoul of the Contracts Clause because of the legitimate purpose of the state in protecting the economic interest of the public's ability to obtain insurance at reasonable rates as well as preventing insureds from receiving windfall profits unforeseen when the contract was executed. *See United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977). Consequently, the Court defers to the Oklahoma Legislature's judgment and protective interest in providing insurance coverage at reasonable rates to the public.

Accordingly, the Court grants defendant's motion to dismiss plaintiffs' claims as to the applicability and constitutionality of section 3651.

B. Bad Faith

Defendant asserts that plaintiffs cannot maintain their bad faith claims on behalf of the Oklahoma policyholders which arise from actual charge benefits underpaid prior to the November 1, 2006 effective date of section 3651 because these claims are barred by the two (2) year statute of limitations for bad faith, and it is entitled to dismissal of plaintiffs' bad faith claims. From November 1, 2006 forward, defendant contends that it reasonably relied on the statutory language of section 3651 in paying claims, such that plaintiffs' bad faith claims should be dismissed. In support of the pre-November 1, 2006 bad faith claims, plaintiffs assert the discovery rules toll the

statute of limitations for the Oklahoma bad faith claimants, and defendant wrongfully concealed materials facts and prevented plaintiffs from discovering these bad faith claims. After section 3651 was enacted, plaintiffs contend that defendant unreasonably relied on section 3651 as a basis to reduce payment on their claims, because it should have known that section 3651 did not apply to the cancer policies or was unconstitutional.

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1978). In so doing, the court held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at 904. The court further recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the insurer's actions must be evaluated in light of the facts the insurer knew or should have known at the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. *Oulds*, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id.* at 612 (internal quotations and citation omitted). Thus, "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1442.

The Court's review of plaintiffs' bad faith claim must be segmented into: (1) reduced

payment of claims for medical treatment before November 1, 2006, and (2) reduced payment of claims for medical treatment on or after November 1, 2006. As related to the statute of limitations, "Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Resolution Trust Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995). Furthermore, Oklahoma has long recognized that:

> Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud.

*Waugh v. Guthrie Gas, Light, Fuel & Improvement Co.*, 131 P. 174, 174 (Okla. 1913).

In support of the bad faith claim arising from actual charge benefits underpaid prior to the November 1, 2006 effective date, plaintiffs assert in the First Amended Class Action Complaint that defendant established an investigation-free claims handling process where it forced an obligation upon its policyholders to disclose confidential insurance information such as an explanation of benefits, or have their claims reduced by thirty (30%) percent. Because plaintiffs assert a method whereby defendant may have concealed material facts and thereby prevented plaintiffs from discovering evidence relating to the underpayment of actual charge benefits, the Court finds these allegations sufficient to assert the pre-November 1, 2006 bad faith claims as subject to either tolling or fraudulent concealment.

Plaintiffs assert that defendant acted in bad faith by underpaying their claims for medical treatment because it was required to construe an ambiguity in the cancer policies in their favor. The Court, however, has found that section 3651 is constitutional and applicable to the cancer policies

13

with reduced claim payments on or after November 1, 2006, and that the statute applies to renewals. As there is no unsettled legal issue underlying plaintiffs' bad faith claims, the Court finds that defendant did not act in bad faith by relying on an Oklahoma statute that expressly applies to the cancer policies at issue to reduce payments on plaintiffs' insurance claims submitted on or after November 1, 2006. *See Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005) ("Actions taken in reasonable reliance on existing law cannot constitute bad faith because such conduct is not unreasonable.").

Plaintiffs' bad faith claims which are premised upon the pre-November 1, 2006 reduced claim payments pose a more exacting inquiry. Plaintiffs assert that the term "actual charges" was ambiguous and defendant failed to construe it in their favor, and this raises a plausible assertion that defendant was unreasonable in erroneously paying the pre-November 1, 2006 claims. Plaintiffs also rely on this Court's *Metzger* decision, *supra*, to the extent defendant argues its conduct was reasonable as a matter of law based upon issue preclusion. Furthermore, plaintiffs contend that defendant cannot, at this stage of litigation, rely upon the allegation that it disgorged itself of any bad faith claim.

Having reviewed the parties' submissions, the Court finds that plaintiffs have sufficiently pled an ambiguity in the cancer policies in connection with the term "actual charges." If the allegations pled are proven, the phrase "actual charges" can reasonably be interpreted two ways: (1) it could reasonably mean the amount the provider charges or bills prior to the application of any discount, or the pre-negotiation amount, or (2) it could reasonably mean the amount the provider ultimately intends to charge after the application of discounts given the practice of providers accepting less from insurers, or the post-negotiation amount. As such, the Court finds plaintiffs have

14

sufficiently pled the phrase is ambiguous. If the phrase "actual charges" is proven to be ambiguous, the Court finds that it must be strictly construed against defendant. To the extent plaintiffs assert that defendant relied upon an interpretation of "actual charges" other than the strict construction, the Court finds that plaintiffs may assert their pre-November 1, 2006 bad faith claims as premised upon the reasonableness of defendant's conduct in reducing the payment of such claims.

The Court's determination in connection with the reasonableness of defendant's conduct stops short of issue preclusion as premised upon *Metzger*, because this case is distinguishable from *Metzger*. This case is a putative class action, which would bring to bear a multitude of fact situations from which to review reasonableness of defendant's conduct, whereas *Metzger* involved a single plaintiff. Unlike *Metzger*, defendant in this case asserts that it disgorged itself of the pre-November 1, 2006 claims, and the Court finds that this affirmative defense of a "payment" or "set off" under Oklahoma law must be proven by sufficient evidence, rather than mere allegations. *See Liberty Nat'l Bank of Weatherford v. Simpson*, 102 P.2d 844, 846 (Okla. 1940) (One who alleges payment has the burden of proving the fact.).

Accordingly, the Court denies the motion to dismiss as to the pre-November 1, 2006 bad faith claims and grants the motion to dismiss as to the post-November 1, 2006 bad faith claims.

C. Non-Oklahoma Policyholders

Because this Court has issued a conversion notice pursuant to Federal Rule of Civil Procedure 12(d) of the res judicata effect of the Louisiana state court settlement upon non-Oklahoma policyholders, and because the parties are to supplement to the record on this issue with pertinent evidentiary materials, the Court finds that defendant's motion to dismiss as to non-Oklahoma policyholders should be denied at this time to allow the parties to supplement the court file.

## IV. CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss as follows:

(A) The Court GRANTS defendant's motion to dismiss as to section 3651 and the post-November 1, 2006 bad faith claims; and

(B) The Court DENIES defendant's motion to dismiss as to the pre-November 1, 2006 bad faith claims and non-Oklahoma policyholders.

**IT IS SO ORDERED this 16th day of June, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE